BEULAH ROGERS[1] *vs.* CITY OF BOSTON & others.[2]

No. 90-P-631.

Suffolk. October 21, 1991. - September 22, 1992.

Present: ARMSTRONG, PERRETTA, & IRELAND, JJ.

*Medical Malpractice*, Tribunal, Bond. *Words*, "Indigency."

In a medical malpractice action, the judge erred in denying the plaintiff's
motion to reduce the $6,000 statutory bond on the ground of indigency,
where the plaintiff qualified under the test of G. L. c. 261, § 27A, as "a
person who is unable to pay the fees and costs of the proceeding in
which [s]he is involved, or is unable to do so without depriving [her]self
. . . of the necessities of life, including food, shelter and clothing" [329-
331], and where, in the circumstances, the plaintiff made a good faith
effort to present a satisfactory offer of proof to the medical malpractice
tribunal with regard to the anesthesia team that had treated the plain-
tiff's decedent [331-332].

CIVIL ACTION commenced in the Superior Court Depart-
ment on January 2, 1987.

The case was heard by *John L. Murphy, Jr.*, J., on a mo-
tion to dismiss.

*Adelio DeMiranda* for the plaintiff.
*Thomas M. Elcock* for George Simpson.
*Elise T. McCarthy* for Sameer Merchant.
*Michael J. Traft* for Michael John.
*Carol A. Kelly* for Peter Listro.
*Robert P. Powers* (*Joseph P. Musacchio* with him) for
Maria Beldekas-Pappageorge.

[1]Individually and, by substitution after the death of Dwayne Rogers, as
administratrix of his estate.
[2]Peter Listro, D.M.D.; Maria Beldekas-Pappageorge, D.M.D.; Michael
John, D.M.D.; Milton Boles, D.M.D.; Sameer Merchant, M.D.; George
Simpson, M.D.; and two unnamed defendants.

ARMSTRONG, J. The plaintiff's son Dwayne Rogers was taken to Boston City Hospital with multiple stab wounds in 1984, when he was eighteen years old. In the emergency surgery that followed, he suffered cardiac arrest, was resuscitated, but had lapsed into a comatose state which lasted until his death in 1988. This action was commenced in 1987, alleging malpractice against the hospital, several anesthesiologists, and a surgeon. The plaintiff's offer of proof, prepared for the medical malpractice tribunal, G. L. c. 231, § 60B, consisted of the complaint, hospital records, an affidavit of the plaintiff, and a letter by an assistant professor of anesthesiology who concluded on the basis of hospital records that there were "neglectful acts attributable to the anesthesia team." The medical malpractice tribunal found in the plaintiff's favor against the city and in favor of all the other defendants. The plaintiff, ordered to post bond of $6,000, filed a motion for reduction, which was denied. She failed to post the bond, and five of the named individual defendants filed a motion to dismiss. This was allowed, and a partial final judgment was entered accordingly.

The plaintiff does not claim, in this appeal, that her offer of proof was sufficient as to any one of the individual defendants. She argues, rather, that it was error for the judge to deny the motion to reduce the bond, making it impossible for her to maintain the action. *Denton* v. *Beth Israel Hosp.*, 392 Mass. 277, 281-282 (1984), suggested that an indigent person should be "entitled to have the bond reduced to an amount commensurate with [her] ability to pay" (at 280) in cases where she "has made a good faith effort to present an offer of proof sufficient to meet the directed verdict standard" (at 281). See also *Gugino* v. *Harvard Community Health Plan*, 380 Mass. 464, 469 (1980). The plaintiff has the burden of proving indigency and compliance with the *Denton* standard.

*Indigency.* The plaintiff in her affidavit accompanying the motion to reduce the bond indicated the following financial circumstances: She is a fifty-eight year old widow living alone in Dorchester; is employed as a homemaker and home

health aid worker at a net salary of $640 per month; receives no other income for her support with the exception of $750 per year in fuel assistance from Action for Boston Community Development; owns a single-family house with a monthly mortgage payment of $427.26; was the subject of foreclosure proceedings when her payments became late due to the combined effect of her son's funeral expenses and a cutback in her hours by the agency for which she works; was able to bring the mortgage payments current with the help of family and friends but is unable to use her home as collateral for loans due to the foreclosure history; has outstanding medical, electric, water, and credit union bills in the amount of roughly $4,600; and has no checking or savings account, savings bonds, treasury bonds, certificates of deposit, stocks, or beneficial interests in trusts. She included copies of income tax returns. No contrary evidence was offered.

Indigency, undefined in § 60B, is to be measured by the criteria set out in G. L. c. 261, § 27A (1988 ed.). See *Paro* v. *Longwood Hosp.*, 373 Mass. 645, 653-654 n.10 (1977). Although the plaintiff does not receive welfare or Medicaid (§ 27A[*a*]) and has income that, in 1989 — the year the tribunal acted — was marginally in excess of the standard set out in § 27A(*b*),[3] she qualifies under the test of § 27A(*c*) as "a person who is unable to pay the fees and costs of the proceeding in which [s]he is involved, or is unable to do so without depriving [her]self . . . of the necessities of life, including food, shelter and clothing." We reject the suggestion of counsel for the defendants that she failed to prove indigency by failing to list the equity in her house. Her showing that she is unable to borrow using that equity as collateral is plausible and uncontradicted, and we do not think that the statute, which mandates posting the bond within thirty days of an adverse tribunal finding, contemplates that a plaintiff should be forced in that period to complete a distress sale of her house so as to have the money available for the bond. Each set of facts must be analyzed separately; we would dis-

[3]Her net income annually was $7,680 ($640 x 12), and the standard for a single person living alone was $7,475 in 1989.

tinguish a case in which a plaintiff was shown to have so substantial an equity in her home as to cast doubt on her professed inability to borrow against it. Contrast also *Aker* v. *Pearson*, 7 Mass. App. Ct. 552, 555-556 (1979), where the plaintiff's affidavit disclosed no information concerning his assets.

*Good faith effort to present a satisfactory offer of proof.* The plaintiff's offer of proof contained nothing that would suggest malpractice on the part of the surgeons, one of whom was the defendant Simpson. As to him the *Denton* standard was not met. The opinion of the plaintiff's expert indicated malpractice on the part of the anesthesia team, without identifying any particular member of that team with the several actions or failures deemed to constitute substandard practice. In formulating the opinion, the expert was constrained by the records; the portions relative to anesthesia do not differentiate between the individual members with respect to particular acts or omissions. The judge apparently took the view that the plaintiff had had ample time to employ discovery to ascertain the actions on an individual basis; but, when the plaintiff scheduled depositions two months prior to the scheduled date for the tribunal to meet, one of the defendant anesthesiologists obtained a protective order "stay[ing] all discovery until after the decision of the . . . tribunal." In the circumstances the plaintiff made a good faith effort to make the requisite showing on the basis of the records available to her. The *Denton* standard was met as to the anesthetists.

The hospital records indicated, on an outer jacket, that the anesthetists were the defendants Boles and Beldekas-Pappageorge and that the "supervising anesthetists" were the defendants John and Listro. An anesthesia record lists as the anesthetists the defendants Boles, Merchant, and Listro. The defendant John, just before the tribunal met, submitted answers to interrogatories stating that he neither administered nor supervised the administration of anesthesia to the plaintiff's son. It is not the function of the malpractice tribunal to determine on conflicting evidence whether the defendant John was or was not a member of the anesthesia team. Com-

pare *Gugino* v. *Harvard Community Health Plan*, 380 Mass. at 468; *DiNozzi* v. *Lovejoy*, 20 Mass. App. Ct. 973, 974 (1985). In view of the fact that the hospital records contain some indication that he was a member of the anesthesia team, the plaintiff met, as to Dr. John, the *Denton* standard.

The partial judgment is affirmed as to the defendant Simpson but is otherwise reversed. The order denying the motion to reduce the bond is reversed, and the case is remanded to the trial court for a determination of the appropriate reduction. In its discretion the court may receive additional evidence on the question.

*So ordered.*